IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Glenn A. Rouse, #263004,     ) | Civil Action No. 6:11-734-MBS-KFM |
|                 Petitioner,    ) | |
|                     ) | **REPORT OF MAGISTRATE JUDGE** |
|          vs.         ) | |
|                     ) | |
| Michael McCall, Warden,    ) | |
| Perry Correctional Institution,   ) | |
|                     ) | |
|           Respondent.   ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The petitioner is presently confined in Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC") pursuant to orders of commitment of the Anderson County Clerk of Court. He was indicted for murder at the August 1999 term of court in Anderson County. The case involved the July 16, 1999, death of a minor child, K ---- I ---- A ------. On November 30, 1999, the petitioner was also indicted for "homicide by child abuse" by the Anderson County Grand Jury (App. 388-91; R. 384-87). On December 6, 1999, the petitioner went to trial on both indictments. He was represented by Robert A. Gamble of the Anderson County Public Defenders Office. The respondents were represented by then Assistant Solicitor Druanne D. White of the Tenth Circuit Solicitor's Office. The matter was tried before the Honorable H. Dean Hall, Presiding Judge. On

December 8, 1999, the petitioner was convicted of the charges. Prior to trial, the state served notice of intent to seek a sentence of life without parole (App. 381). Judge Hall sentenced the petitioner to a term of life without parole on each of the indictments.

The petitioner appealed. In the appeal before the South Carolina Court of Appeals, the petitioner was initially represented by Wanda H. Haile, Senior Assistant Appellate Defender. On August 2, 2001, counsel Haile filed a Final *Anders* Brief of Appellant and a Petition To Be Relieved As Counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967). The sole issue raised in the *Anders* brief was "The lower court erred in admitting the photographs of the deceased into evidence at trial." Final *Anders* Brief of Appellant, 3. A *pro se* brief of appellant was made September 24, 2001, in which the petitioner was provided the opportunity to assert reasons why his counsel should not be relieved. The petitioner raised six issues. On March 28, 2002, after review pursuant to *Anders*, the South Carolina Court of Appeals dismissed the appeal and entered an order relieving appointed appellate counsel. *State v. Rouse*, Unpublished Op. No. 2002-UP-241 (March 28, 2002). On June 19, 2002, the Court of Appeals entered an Order Denying Petition for Rehearing. *State v. Rouse*, Order Denying Petition for Rehearing, (S.C. Ct. App. June 19, 2002) .

The petitioner made a Petition for Writ of Certiorari in the South Carolina Supreme Court on October 1, 2002. In the petition, he asserted the following Questions Presented:

> I. Did the court of appeals err by overlooking trial court's denying of defense motion to direction of verdict?
>
> II. Did court of appeals overlook that trial court lacked subject matter jurisdiction?
>
> III. Did the Court of Appeals err by overlooking trial courts allowing multiplitious indictments?

2

IV.  Did the Court of Appeals overlook trial court's failure to prove elements beyond a reasonable doubt?

V.  Did the Court of Appeals overlook due process violation during grand jury proceedings?

VI.  Did the Court of Appeals overlook that trial court erred and abused his discretion in allowing prosecution to shift burden of proof? ["Council[sic] was ineffective in allowing trial court to abuse his discretion by shifting burden of proof."]

*Pro Se* Petition for Writ of Certiorari.  The respondent made its Return to the Petition on November 1, 2002.  In the Return, the respondent asserted:

I.  Certiorari is not warranted where the trial court denied a motion for a directed verdict of acquittal for murder where evidence of malice aforethought existed.

II.  The trial court had jurisdiction to convict of murder upon the proper murder indictment in light of *Joseph v. State*, __ S.E.2d __ (Op. No. 25539) (S.C. S.Ct. Oct. 14, 2002). The court further had subject-matter jurisdiction on the "homicide by child abuse" indictment.

III.  The trial court did not err in allowing the indictments, convictions, and sentences for murder and "homicide by child abuse. "

IV.  The record contains sufficient evidence of malice aforethought to support the conviction for murder.

V.  Certiorari is not warranted by his complaint against the grand jury process where no issue was raised at trial.

VI.  The Petitioner's complaint about the effective assistance of his trial counsel is not preserved in the trial court and is inappropriate for a direct appeal .

Return to Petition for Writ of Certiorari, pp. 2-8.  On February 6, 2003, the South Carolina Supreme Court denied his petition by letter order.  The Remittitur was issued by the South Carolina Court of Appeals on March 31, 2003.

3

On February 3, 2004, the petitioner filed an Application for Post-Conviction Relief ("PCR") (App. 393-407). In his application, the petitioner alleged that he was being held in custody unlawfully for the following reasons:

1. "Ineffective assistance of counsel;"
2. "Prosecutorial misconduct;" and
3. "Shifting the burden of proof."

Respondent made its Return on June 25, 2004 (App. 490-93).

An evidentiary hearing into the matter was convened on June 30, 2006, before the Honorable J. Cordell Maddox, Jr., Circuit Court Judge. The petitioner was present at the hearing and was represented by R. Lawton McIntosh. The respondent was represented by Daniel E. Grigg of the South Carolina Attorney General's Office. At the hearing, the petitioner testified on his own behalf. Robert Gamble, the petitioner's trial attorney, also testified at the hearing. The PCR court also had before it the records of the Anderson County Clerk of Court, the transcript of the proceedings against the petitioner, the petitioner's records from the SCDC, and the appellate records from the petitioner's appeal. On July 17, 2006, Judge Maddox denied the application for PCR (App. 528-33). Counsel for the petitioner made a Motion for Reconsideration pursuant to Rule 59, SCRCP (App. 535-36). The motion was denied by Judge Maddox on April 1, 2009 (App. 542-43).

The petitioner timely noticed his appeal. On appeal, the petitioner was represented by LaNelle Cantey DuRant of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. On September 22, 2009, counsel made a Petition for Writ of Certiorari raising two issues:

I. Did the PCR court err in failing to find trial counsel was ineffective for telling the jury that petitioner was guilty of involuntary manslaughter and neglect for leaving the one year old child in the bath tub and for not taking that child to the hospital emergency room when he was sleeping and lethargic after a blow to the head?

2. Did the PCR court err in failing to find trial counsel ineffective for not objecting when the solicitor told the jury that she thought the state's expert was the best in the world?

4

Petition for Writ of Certiorari, p. 2. The respondent, through former Assistant Attorney General A. West Lee, made its Return on January 6, 2010. On January 7, 2011, the Supreme Court of South Carolina denied the petition for writ of certiorari by letter order. The remittitur was issued on January 25, 2011.

In his *pro se* petition for a writ of habeas corpus now before this court, the petitioner makes the following allegations:

### Ground One

1. The trial court erred in admitting the photographs of the deceased into evidence at trial.

2. Trial court erred and abused his discretion by denying defense motion for direct verdict.

3. Trial court failed to prove essential element of murder and child abuse by murder beyond a reasonable doubt.

4. Trial court erred and abused his discretion in allowing prosecution to shift burden of proof to defendant to disprove he did not commit said murder and homicide by child abuse.

### Ground Two

1. Ineffective assistance of counsel.

2. Prosecutorial Misconduct.

3. Double jeopardy (*See Blockburger* test, 284 U.S. 299 (1932)).

4. Counsel admitted defendant's guilt without his consent.

### Ground Three

Petitioner was denied due process of law and effective assistance of counsel in violation of his Sixth and Fourteenth Amendments of the U.S. Constitution and South Carolina Constitution (Art. I., §3 & 14) , when his lawyer deprived him of his right to present a effective defense thru the assistance of an independent forensic pathologist to challenge the state's position as to the victim's cause of death, and other injuries pursuant to *Ake v. Oklahoma*, 470 U.S. 65, 77, 105 S.Ct. 1087.

***Ground Four***

1. Petitioner funding motion for him to get an independent pathologist was purposely not ruled on by the PCR judge, even after he said he would review. [PCR ISSUE]

2. Petitioner also argued that "unlawful Act Involuntary Manslaughter" and "criminal negligence" are two distinct charges and have contradictory and confusing deficient laws or language. The unlawful act involuntary manslaughter statute has been discontinued since 1968 when criminal negligence statute was adopted ("reckless disregard to safety of others). This statute invalidates all earlier cases ruling on "simple negligence and unlawful act involuntary manslaughter.

(Federal pet., pp. 5-6).

On November 9, 2011, the respondent filed a motion for summary judgment. On that same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response on December 14, 2011.

## UNDERLYING CASE FACTS

On, December 8, 1999, the petitioner was convicted of homicide by child abuse for the murder of his one year old child. Testimonial and photographic evidence in the record showed that the child was held and choked for two to five minutes (App. 265). The child had over 30 marks, including bruises, contusions, and bite marks, on his body consistent with inflicted injuries of child abuse. The State offered several autopsy photographs into evidence during the sentencing phase of the trial that were admitted over the objection of the defense (App. 168-71).

## APPLICABLE LAW AND ANALYSIS

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective

7

> assistance of counsel that were properly raised, but not
> adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### *Ground One*

In the first ground for relief, the petitioner alleges four claims that will be discussed in turn below.

First, the petitioner asserts the trial court erred in admitting photographs of the deceased into evidence at trial. This issue was raised in the petitioner's direct appeal. After review of the entire record pursuant to *Anders v. California*, 386 U.S. 738 (1967), the appeal was dismissed. On November 9, 2011, the South Carolina Court of Appeals found that no material fact or principle of law had been overlooked or disregarded, and, therefore, the petitioner's petition for rehearing was denied. The petitioner did not raise this issue in his petition for writ of certiorari to the South Carolina Supreme Court, his PCR action, or his PCR appeal.

The respondent argues that this ground is procedurally defaulted because the dismissal of the direct appeal, filed pursuant to the procedure set forth in *Anders v. California*, 386 U.S. 738 (1967), was not an adjudication on the merits under *State v. Lyles*, 673 S.E.2d 811 (S.C. 2009). As noted by the Honorable Margaret B. Seymour, Chief United States District Judge, "[t]his argument has been consistently rejected by the judges of this court." *McDaniel v. McCall*, C.A. No. 1:09-1348-MBS-SVH, 2010 WL 3824708, at *8 (D.S.C. Aug. 3, 2010) (citing cases).

This ground for relief fails on the merits. In federal habeas actions, courts do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. *See Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir.1993). The State offered several autopsy photographs into evidence during the sentencing phase of the trial, which were admitted

over the objection of the defense (App. 168-74). Duplicate photographs and photographs showing the internal examination of the child were excluded. The State argues that the photographs were properly admitted because they corroborated and assisted expert witness testimony and were introduced to illustrate the circumstances of the death to resolve the petitioner's claims of accident or drowning. It is well settled in this state that "[i]f the photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." *State v. Nance*, 466 S.E.2d 349, 353 (S.C. 1996); *see also State v. Holder*, 676 S.E.2d 690, 697 (S.C. 2009). As argued by the respondent, the trial judge insured that any unfairly prejudicial material was excluded from the photographs prior to admission. This court finds that the evidence was relevant and probative to defeat the petitioner's claims about the child's injuries and circumstances of his death, and the admission of the evidence was not so extreme as to result in a denial of a constitutionally fair proceeding. Accordingly, this claim fails.

In his second and third assertions, the petitioner claims that the evidence was insufficient to prove the crimes of murder and homicide by child abuse, and the trial court should have granted a motion for directed verdict. This issue was raised in the petitioner's *pro se* pleadings for his direct appeal and petition for certiorari and subsequently found to be without merit and dismissed by the Court of Appeals and the South Carolina Supreme Court.

This claim fails on the merits. In an earlier state court pleading, the petitioner asserted the directed verdict motion should have been granted because there was no evidence of malice aforethought. The directed verdict motion was made at the close of the state's case and denied. In the oral motion at trial, counsel Gamble claimed that there was no evidence of malice aforethought and the only showing was that there possibly was negligence on the part of the defendant in leaving the child and in his attempt to resuscitate.

Applying *Jackson v. Virginia*, 443 U.S. 307 (1979), the trial court found there was sufficient evidence in this case and denied the motion (App. 323-24).

Federal court review concerning sufficiency of the evidence claims is "sharply limited." *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Id.* at 405-406 (citing *Wright*, 505 U .S. at 292). With this in mind, the standard of review regarding sufficiency of the evidence claims in criminal cases is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In other words, a habeas petitioner "is entitled to relief only if 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Wilson*, 155 F.3d at 406 (quoting *Jackson*, 443 U.S. at 324)).

As argued by the respondent, the record contains sufficient evidence of malice aforethought, and, contrary to the bare assertions of the petitioner, there is sufficient evidence to support the denial of the directed verdict[1] motion on the murder charge. Malice has been defined as the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong. *State v. Stuckey*, 556 S.E.2d 403, 412 (S.C. 2002). Evidence showing a malignant recklessness of another's life or safety is sufficient to infer malice. *State v. Mouzon*, 99 S.E.2d 672 (S.C. 1957). There was evidence that the child was held and choked for two to five minutes (App. 265), and the child had over 30 marks on him (App. 263, 248-64). He had a bite mark on his arm (App. 186-87) and distinct hand

---

[1]A case should be submitted to the jury when the evidence is circumstantial "if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced." *State v. Mitchell*, 535 S.E.2d 126, 127 (S.C. 2000) (citation omitted).

marks and bruising on his buttocks (App. 251-52). He also had a mark on his neck consistent with choking (App. 257-63). Contrary to the petitioner's claim that the child drown in the bathtub (App. 143, 147, 205-208, 214-17), there was no fluid in his lungs to indicate a drowning (App. 266-67). Prior to being placed in the petitioner's custody that evening, the child had no injuries (App. 116, 122, 128-31; *see also* App. 220-21). The pathologist opined the injuries were consistent with an inflicted injury as opposed to an accident or CPR (App. 273-77). Based upon the foregoing, this court finds that the evidence sufficiently reveals "malice aforethought."

Similarly, there was sufficient evidence under the *Jackson* standard for the crime of homicide by child abuse. In South Carolina Code Annotated § 16-3-85, homicide by child abuse is defined as:

> (A) A person is guilty of homicide by child abuse if the person:
>
> > (1) causes the death of a child under the age of eleven while committing child abuse or neglect, and the death occurs under circumstances manifesting an extreme indifference to human life; or
> >
> > (2) knowingly aids and abets another person to commit child abuse or neglect, and the child abuse or neglect results in the death of a child under the age of eleven.
>
> (B) For purposes of this section, the following definitions apply:
>
> > (1) "child abuse or neglect" means an act or omission by any person which causes harm to the child's physical health or welfare;
> >
> > (2) "harm" to a child's health or welfare occurs when a person:
> >
> > > (a) inflicts or allows to be inflicted upon the child physical injury, including injuries sustained as a result of excessive corporal punishment;
> > >
> > > (b) fails to supply the child with adequate food, clothing, shelter, or health care, and the failure to

11

> do so causes a physical injury or condition
> resulting in death; or
>
> (c) abandons the child resulting in the child's
> death.

S.C. Code Ann. § 16-3-85. Plainly, the evidence summarized above meets the *Jackson* standard of sufficiency of the evidence for this crime.

Based upon the foregoing, the state court did not unreasonably apply *Jackson*, and thus this claim should be dismissed.

In his fourth allegation, the petitioner claims that the trial judge erred and abused his discretion in allowing the prosecution to shift the burden to require the defendant to disprove the crimes. The petitioner raised this issue on direct appeal in his *Pro Se* Brief of Appellant and in his *Pro Se* Petition for Writ of Certiorari.[2] During the PCR proceeding (App. 401-33), the petitioner asserted trial court error when the trial court instructed the jury that while criminal intent is always a matter for the jury, the State does not have to prove a specific intent before a defendant can be found guilty, and a general intent is sufficient (App. 404 (citing App. 368)) and that his counsel was ineffective for failing to object when the prosecutor made a statement concerning malice in the closing argument that shifted the burden of proof (App. 423 (citing App. 334-35)). The PCR judge found that trial counsel was not ineffective for not objecting to the solicitor's statements during closing or to the jury instructions (App. 528-33).

The petitioner's claim fails on the merits. There is no support in the record for this claim. The jury was advised properly that the State bore the burden of proof beyond a reasonable doubt (App. 362-64, 367-71). Moreover, the trial judge appropriately charged the jury (App. 368-70) that specific intent is not required for the crime of murder. *See State v. Foust*, 479 S.E.2d 50, 51 n.2 (S.C. 1996). The trial court instructed the jury as follows:

---

[2]The respondent mistakenly argues that "[t]his issue was not raised in any manner in the trial court or state appellate courts in the direct appeal" (m.s.j. at 23).

I charge you that the State does not have to prove a specific intent before a defendant may be found guilty. A general intent is sufficient. Such intent may be shown by acts or conduct of the accused, the character of the means or instrument used, the manner in which it was used, purpose to be accomplished, resulting wounds or injuries, and other circumstances. Intent to kill may be inferred from the character of the assault, the use of a deadly weapon with an opportunity to deliberate, or the use of a dangerous or deadly weapon in a manner reasonably calculated to cause death or great bodily harm. Intent may be inferred when it is demonstrated that the accused voluntarily and willfully commits an act, the natural tendency of which is to destroy another's life.

(App. 368-69). The trial court further appropriately charged the jury:

Malice does not necessarily mean an actual intent to take human life. It may be inferred when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life. Malice does not necessarily import ill will toward the individual injured, but signifies a general malignant recklessness of the life and safety of others, or a condition of mind which shows a heart regardless of social duty and fatally bent on mischief.

(App. 370). *See Foust*, 479 S.E.2d at 51 n.2; *see also Herring v. Stevenson*, C.A. No. 0:11-160-MBS-PJG, 2012 WL 952855, at *7 (D.S.C. March 19, 2012) (slip copy).

Similarly, in the closing argument, the prosecutor stated, "You remember in opening statement I told you you don't have to prove intent to kill. The killing of another person is self-explanatory" (App. 333-34). In the opening statement, the prosecutor stated, "The crime of murder does not require intent to kill. It's a misconception. All it requires is a malignant recklessness of another's life and safety" (App. 113).

A petitioner alleging that his right to due process was violated by an improper jury instruction "must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (quotations omitted). The petitioner has made

13

no such showing here. Further, the petitioner has failed to show that the prosecutor's discussion of malice in the closing argument shifted the burden of proof to the petitioner to prove his innocence. Accordingly, this ground should be dismissed.

### Ground Two

In his second ground for relief, the petitioner alleges "ineffective assistance of counsel" and "admitted defendant's guilt without his consent" (pet. at 5). During the PCR proceeding, the petitioner raised various factual specifications of ineffective assistance of counsel. Specifically, the petitioner testified that his counsel was ineffective because he admitted the petitioner was guilty during the trial; he asked the jury to find the petitioner guilty of involuntary manslaughter when the petitioner never discussed this with counsel; counsel failed to object to the solicitor's comment regarding choking the child for nearly two minutes; and counsel failed to object to the prosecution's vouching for state's witnesses. Based on the evidence and the testimony of the petitioner and his attorney, Mr. Gamble, the PCR judge found that the petitioner had failed to show that his attorney was ineffective, stating in his order:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly.
> . . . .
> In a post-conviction relief action, Applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); *Butler*, Id.

14

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, Id. Applicant must overcome this presumption to receive relief. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." *Cherry*, 300 S.C. at 117, 385 S.E.2d at 625, citing *Strickland*. Second, counsel's deficient performance must have prejudiced Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cherry*, 300 S.C. at 117-18, 386 S.E.2d at 625. As discussed above, Applicant has failed to carry his burden in this action. Therefore, this Court finds that the application must be denied and dismissed.

. . . .

This Court finds that Applicant was charged and convicted of two separate crimes. Murder and homicide by child abuse contain different elements that must be proved to warrant a conviction. Furthermore, one is not a lesser-included offense of the other. This Court further finds that trial strategy is to be ultimately determined by the attorney, and in this case, Mr. Gamble, applied a reasonably valid strategy to offer the best possible representation to Applicant. Based on the facts available to Mr. Gamble, seeking the lesser-included offense of involuntary manslaughter was a legitimate strategy in this case. This Court further finds that Mr. Gamble fully investigated the case and kept Applicant informed as his case progressed. This Court further finds that the solicitor's comments did not rise to the level of vouching or misconduct. Certainly, Mr. Gamble was not ineffective for not objecting to the solicitor's statements. Solicitors are given a certain latitude and Mr. Gamble, as an experienced attorney, is correct in that sometimes it is better to let an issuer pass rather than raise it again in front

of the jury. In addition, Mr. Gamble was not ineffective for not objecting to the jury instructions given by the judge. Jury instructions are to be taken as a whole, and as a whole, these instructions were sufficient.

> Finally, this Court finds that Applicant has failed to show that Mr. Gamble's representation was deficient in any way. Certainly, Applicant has not shown that he was prejudiced by Mr. Gamble's representation.

(App. 529-32).

In an appeal from the denial of PCR, the petitioner raised two grounds of ineffective assistance of counsel to the South Carolina appellate courts:

> 1. Ineffective for telling the jury that petitioner was guilty of voluntary manslaughter and neglect for leaving the one year old child in the bath tub and for not taking the child to the hospital emergency room when he was sleepy and lethargic after a blow to the head, citing App . 361 and;

> 2. Ineffective for not objecting when the Solicitor told the jury that the state's expert was the best in the world, citing App. 349, l. 11-16 and asserting in the petition that this referred to the pathologist, Dr. Woodard.[3]

(Petition for Writ of Certiorari, pp. 2-12).

The respondent argues that while the petitioner's bare assertion of "ineffective assistance of counsel" fails to state with any specificity what assertion he is attempting to raise, there are only two specifications that are exhausted and preserved for this court's review.  This court agrees.

---

[3]  Review of the record reveals that this comment was directed to the forensic dentistry expert, Dr. Sperber from California who testified concerning the bite marks, not Dr. Woodard (App. 178-200).

16

Relief under § 2254 may be had only after a habeas petitioner has exhausted his state court remedies. "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997). Stated plainly, in the interest of giving state courts the first opportunity to consider alleged constitutional errors in state proceedings, a § 2254 petitioner is required to "exhaust" all state remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

To exhaust a claim in state court, a person in custody has two primary means of attacking his conviction: filing a direct appeal and/or filing an application for relief under the South Carolina Post Conviction Procedure Act, S.C.Code Ann. §§ 17-27-10-160. "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies." *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Procedural default can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. If a federal habeas petitioner has procedurally defaulted his opportunity for relief in the state courts, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews*, 105 F.3d at 911 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991). *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), and *George v. Angelone*, 100 F.3d 353, 363 (4th Cir.1996)). Thus, where the state court has not had the opportunity to apply its own procedural bar, the federal court will

17

nevertheless bar the claim where application of the bar is clear. *Teague*, 489 U.S. at 297-98.

Notwithstanding the foregoing, a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction in very limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). First, a federal court will review a procedurally defaulted claim if the petitioner can demonstrate cause for the default and actual prejudice therefrom, and second, a petitioner can rely on the doctrine of actual innocence. *Coleman*, 501 U.S. at 750. "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 286 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Moreover, the claim of cause itself must be exhausted. *See Edwards v. Carpenter*, 529 U.S. 446 (2000). To establish "actual prejudice," a petitioner generally must show some error. In addition, a petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm. Lastly, "actual innocence" is not an independent claim, but a method of excusing default. To prevail under this theory, a petitioner must produce new evidence that was not available at trial to establish his factual innocence. *Royal v. Taylor*, 188 F.3d 239, 243-44 (4th Cir. 1999).

The petitioner attempts to establish cause by arguing his PCR counsel was ineffective for failing to pursue the claims in the PCR action and appeal. The Supreme Court recently held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012). "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the

prisoner must demonstrate that the claim has some merit." *Id.* at 1318. The petitioner has failed to do so here with regard to any of the underlying claims (*see* resp. to m.s.j at 1-12).

The two specifications of ineffective assistance of counsel that have been raised and exhausted fail on the merits. In his first specification, the petitioner asserted that, during his closing argument, trial counsel, Mr. Gamble, was ineffective for telling the jury that the petitioner was guilty of involuntary manslaughter and criminal neglect without gaining the petitioner's earlier consent to "plead him guilty." In support of this position, the petitioner's cites two specific references (resp. m.s.j. at 9). In the first, Mr. Gamble stated that "if anything, he's guilty of involuntary manslaughter" (App. 360). In the second, Mr. Gamble stated:

> Anything Glenn Rouse is guilty of is involuntary manslaughter. Period. Neglect on two counts. Leaving him in the tub and not taking him to the ER, not walking the five blocks with the child on July 9th to the ER when he was lethargic, sleepy after a blow to the head. And that was the cause of death.

(App. 361).

During his PCR hearing, the petitioner testified that his lawyer did not tell him that he was going to make this statement, but his attorney did inform him that he was going to "get the prosecution to allow . . . a verdict to be brought in of involuntary manslaughter as a lesser-included offense" (App 514-15). The petitioner's attorney testified that his strategy was to avoid a murder conviction because of the overwhelming physical evidence against his client. After considering the testimony of the petitioner and his attorney, the PCR court found the petitioner had failed to prove ineffective assistance of counsel:

> This Court further finds that trial strategy is to be ultimately determined by the attorney, and in this case, Mr. Gamble, applied a reasonably valid strategy to offer the best possible representation to Applicant. Based on the facts available to Mr. Gamble, seeking the lesser-included offense of involuntary

19

> manslaughter was a legitimate strategy in this case. This Court
> further finds that Mr. Gamble fully investigated the case and
> kept Applicant informed as his case progressed.

(App. 532).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

This court agrees with the respondent that the PCR court reasonably applied the *Strickland* standard in this case in concluding that counsel was not deficient in the strategic tactic to accept the petitioner's factual version, which was highly disputed by forensic experts at trial, and to suggest that an involuntary manslaughter verdict was appropriate in an attempt to avoid convictions for murder or homicide by child abuse and a substantial increase in sentencing.

With regard to a similar strategic decision, the Fourth Circuit has determined that trial counsel was not ineffective:

> We have previously distinguished statements that amount to
> mere tactical retreats from those that parlay a complete
> surrender. See *Clozza v. Murray*, 913 F.2d 1092, 1099 (4th
> Cir.1990). Some remarks of complete concession may
> constitute ineffective assistance of counsel, but tactical retreats

may be reasonable and necessary within the context of the entire trial, particularly when there is overwhelming evidence of the defendant's guilt. *Id*. at 1099-1100.

Trial counsel's remarks constituted tactical retreats. Conceding Bell's guilt on the kidnapping charge did not preclude Bell from maintaining his innocence on the murder charge. Furthermore, a GBMI verdict would have increased Bell's chances of receiving a life sentence rather than a death sentence. In light of the evidence against Bell, trial counsel's actions were realistic . . . .

Trial counsel urged the jury to reject the State's evidence and find his client GBMI under South Carolina law. As the state PCR judge recognized, trial counsel feared he would lose credibility with the jurors at the trial's sentencing phase if he tried to convince them during the guilt phase that Bell was innocent. In a federal habeas corpus proceeding, we presume that the state court findings are correct. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539 (1981); *Roach v. Martin*, 757 F.2d 1463 (4th Cir.1985). Trial counsel's pursuit of a GBMI verdict conformed to a reasonable pattern of trial strategy and advocacy by one familiar with the intricacies of a death penalty case and the impact psychiatric testimony has on those cases. Because this was a reasonable and consented to strategy, there was not, in the total context of Bell's trial, deficient performance by counsel. *See Berry v. King,* 765 F.2d 451 (5th Cir.1985), cert. denied, 476 U.S. 1164 (1986).

*Bell v. Evatt*, 72 F.3d 421, 429-30 (4th Cir. 1995) (parallel citations omitted).

As in *Bell*, counsel Gamble's comments were not a complete concession, but rather were a strategic attempt grounded in the petitioner's own statements to avoid a murder conviction. Furthermore, the petitioner was aware that counsel was going to seek an involuntary manslaughter verdict (App. 514-15). The petitioner has not shown that counsel was deficient in that choice of tactics. The state court's rejection of this claim was reasonable under *Strickland*, and this claim should be dismissed.

In his second claim of ineffective assistance, the petitioner contended that the prosecutor's remark that the jury got "the best expert in the world" amounted to improper vouching for Dr. Woodard, the forensic pathologist, and that this prejudiced his case because Dr. Woodard's credibility was critical, and thus his trial counsel should have objected to it. In the closing argument, the prosecutor stated, "So you look at the pattern of the injury or the physical characteristics. What about the bite mark? That's another pattern injury we see. Remember the expert - and you really did get the best expert in the world - what did he tell you?" (App. 349).

In support of this position (*see* resp. m.s.j. at 8), the petitioner cites *State v. Shuler*, 545 S.E.2d 805 (S.C. 2001), in which the South Carolina Supreme Court held that "[i]mproper vouching occurs when the prosecutor places the government's prestige behind a witness by making explicit personal assurances of a witness's veracity, or where prosecutor implicitly vouches for a witness's veracity by indicating information not presented to the jury supports the testimony." *Id.* at 818 (citing *State v. Kelly*, 540 S.E.2d 851 (S.C. 2001)).

In rejecting the claim, the state PCR court held:

This Court further finds that the solicitor's comments did not rise to the level of vouching or misconduct. Certainly, Mr. Gamble was not ineffective for not objecting to the solicitor's statements. Solicitors are given a certain latitude and Mr. Gamble, as an experienced attorney, is correct in that sometimes it is better to let an issue pass rather than raise it again in front of the jury.

(App. 532).

The respondent argues that this is a reasonable application of *Strickland*. This court agrees. The record reflects that counsel testified at the PCR hearing that he did not object because he did not see a problem with the prosecutor's statement and because he did not want to draw additional attention to it (App. 506). He stated that when an objection

is made to a statement made during a closing argument, it "paints it red" and further calls the jury's attention to it (App.512).

Further, the petitioner misdirects these comments to Dr. Woodard and the credibility of his testimony (*see* resp. m.s.j. at 8). However, this comment was not concerning Dr. Woodard, but rather Dr. Sperber, the forensic dentist, who testified about the bite mark and concluded that he was unable to match the bite mark to the petitioner but could opine that the child did not do the bite himself (App. 189-90, 199-201; *see* App. 349). To be entitled to relief, the petitioner must show the complained of prosecutorial comments "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). *See also Von Dohlen v. State*, 602 S.E.2d 738, 746 (S.C. 2004). The petitioner has made no such showing here. Counsel cannot be faulted for failing to object to this brief comment. Based upon the foregoing, the PCR court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, this ground for relief fails.

In his next assertion under Ground Two, the petitioner simply states "Prosecutorial Misconduct" and offers no supporting argument (pet. at 5). Clearly this allegation is too vague for the respondent to prepare a response (*see* m.s.j. at 38). In his response to the motion for summary judgment (resp. m.s.j. at 6), the petitioner contends that his counsel was ineffective for failing to object to the prosecutor's alleged improper statements during opening and closing arguments, which the petitioner asserts inflamed the passions of the jury. Specifically, he complains of the following statements during the prosecutor's opening statement and closing argument:

> [The victim] had just celebrated his first birthday before his father killed him.

. . . And then he slapped him and got him to spit up water.

. . . don't kill your child when you're spanking your child.

. . . two, the defendant is acting lawfully.  Again, it's not lawful to choke your child for two minutes or do the other things that were done. . . . .

Please do not reward this defendant because he picked on a one-year-old child instead. . . . .

This isn't picking a child out of the tub. We've all done that a million times if we have children.  That is a squeezing "shut up." That's what that is. . . .

 We know this child isn't an easy bruiser. . . .

For two minutes, for two minutes at least this defendant held this child and stopped his breath.

(App. 111, 112, 339, 340, 343, 347, 349, 353).

The trial court in this case instructed the jury that the attorneys' opening statements and closing arguments were not evidence (App. 108-110).  Further, while the petitioner argues (resp. m.s.j. at 7) that the prosecutor misled "the jury into thinking that someone testified that the child is not an easy bruiser . . . but the record is devoid of that," he is mistaken.  The child's mother testified at trial that the child was not an easy bruiser (App. 129).  He also argues that there was no evidence that the child was choked for two minutes (resp. m.s.j. at 6).  Again, the petitioner is mistaken.  Dr. Woodard, the forensic pathologist, testified that the child's injuries were consistent with being held and choked for two to five minutes (App. 264-65).  The petitioner has failed to show that the any of the prosecutor's statements were improper.  Accordingly, trial counsel was not deficient in failing to object.

In his next assertion under Ground Two, the petitioner alleges, "Double Jeopardy (*See Blockburger* test, 284 U.S. 299 (1932)" (pet. at 5).  This issue was not raised at trial.  The petitioner raised the issue in the direct appeal in his *pro se* pleadings.  The petitioner also sought to raise the claim in the state PCR proceedings in the Rule 59 motion

claiming the Double Jeopardy Clause was violated "due to the fact that both offenses were based on a single occurrence, based on the same set of facts, and the evidence necessary to support the first offense charged [murder] was sufficient to procure a legal conviction for the second offense [homicide by child abuse]" (App. 536 (citing *State v. Hoffman*, 186 S.E. 2d 421 (1972)).

This claim fails on the merits. The Double Jeopardy Clauses of the United States and South Carolina Constitutions protect citizens from being twice placed in jeopardy of life or liberty for the same offense. *See* U.S. Const. amend. V ("No person shall be ... subject for the same offence to be twice put in jeopardy of life or limb . . ."); S.C. Const. art. I, § 12 ("No person shall be subject for the same offense to be twice put in jeopardy of life or liberty . . ."). More specifically, "[t]he Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction, and protects against multiple punishments for the same offense." *Stevenson v. State*, 516 S.E.2d 434, 436 (S.C. 1999). In both multiple punishment and successive prosecution cases, double jeopardy claims are evaluated under the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932). *Id.* at 437.

Pursuant to *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. Under the *Blockburger* test, "a defendant may be convicted of two separate crimes arising from the same conduct without being subjected to double jeopardy, where [his] conduct 'consists of two 'distinct' offenses.'" *State v. Pace*, 523 S.E.2d 466, 471 (S.C. Ct. App.1999) (quoting *State v. Moyd*, 468 S.E.2d 7, 9 (S.C. Ct. App.1996)).

As argued by the respondent, murder and homicide by child abuse each contain separate elements not included within the other. See *State v. Parker*, 571 S.E.2d

288, 289 (S.C. 2002) (where elements of each crime are not included within the other, they are separate, not lesser included offenses).  South Carolina law defines "murder" as "the killing of any person with malice aforethought, either express or implied." S.C.Code Ann. § 16–3–10.  "Homicide by child abuse" requires a "child" and conduct meeting the definition of "child abuse," which are not elements of murder.  *See id.* § 16-3-85.  Under the "same elements" test, these crimes are distinct. Accordingly, the double jeopardy claim is without merit.

### *Ground Three*

In this allegation, the petitioner claims that his trial counsel deprived him of his right to present an effective defense through the assistance of an independent forensic pathologist to challenge the state's position as to the victim's cause of death[4] (pet. at 6 (citing *Ake v. Oklahoma* , 470 U.S. 65 (1985)).  This claim was raised at the state PCR proceeding, but not in the PCR appeal (*see* App. 535-36 (Rule 59 Motion); App. 542 (Rule 59 Order ¶ 2)).  Accordingly, the claim is procedurally barred absent a showing of cause for the default and actual prejudice therefrom, or actual innocence. *Coleman*, 501 U.S. at 750.

The petitioner argues that his PCR appellate counsel did not raise the claim, which was ineffective assistance of counsel and should excuse his procedural default (resp. m.s.j. at 10).  As discussed above, the Supreme Court recently held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." *Martinez*, 132 S.Ct. at 1315.  This holding was specifically limited to "initial-review collateral proceedings," not appellate PCR proceedings, as in this case.  The Court stated:

---

[4]The record shows that the trial judge entered an order appointing Dr. Joel Sexton, a qualified forensic pathologist, upon motion of defense counsel Gamble, to examine the victim's autopsy results (App. 487). Counsel Gamble testified in the PCR hearing that he sent his complete file, the microscopic evidence, the SLED reports, the DSS reports and the coroner's report to Dr. Sexton for his review (App. 508).  Mr. Gamble reported that he and  Dr. Sexton had an agreement that if a report was bad, he did not want it in writing. He stated that he received a call back from Dr. Sexton, and he did not get a written report (App. 508-509). The PCR court found that counsel Gamble was a credible witness as to his testimony (App. 532).

> As *Coleman* recognized, this marks a key difference between initial-review collateral proceedings and other kinds of collateral proceedings. When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. This Court on direct review of the state proceeding could not consider or adjudicate the claim. *See, e.g., Fox Film Corp. v. Muller*, 296 U.S. 207 (1935); *Murdock v. Memphis*, 22 L.Ed. 429 (1875); *cf. Coleman, supra*, at 730–731. And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.
>
> The same is not true when counsel errs in other kinds of postconviction proceedings. While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding. *See, e.g., Coleman, supra*, at 756.

*Martinez*, 132 S.Ct. at 1317 (parallel citations omitted). Importantly, the Court further stated:

> This limited qualification to *Coleman* does not implicate the usual concerns with upsetting reliance interests protected by stare decisis principles. *Cf., e.g., Montejo v. Louisiana*, 556 U.S. 778, 792–793 (2009). *Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial.

*Id.* at 1319 (parallel citations omitted). Based upon the foregoing, the petitioner cannot establish cause for his default by arguing that his appellate PCR counsel was negligent. Moreover, the petitioner has made no showing of actual innocence. Accordingly, this claim is procedurally barred.

### Ground Four

In this ground, the petitioner contends that the state PCR judge erred in not ruling on his request for funding for another independent pathologist to testify at the PCR hearing, although the judge stated he would rule upon it. This matter was presented in the

Rule 59 motion (App. 536), and the PCR judge ruled that the "failure to rule on [the petitioner's] motion prior to hearing is not prejudicial error" (App. 542). It was not raised in the PCR appeal. Accordingly, this issue is procedurally barred for the same reasons discussed above with regard to the petitioner's ineffective assistance of counsel claim. **d**

In his final claim, the petitioner contends that "unlawful act involuntary manslaughter and criminal negligence are two distinct charges and have contradictory and confusing definitions or language." He further contends that "unlawful act manslaughter has been discontinued since 1968 when criminal negligence statute was adopted" (pet. at 6). In the Rule 59 motion, PCR counsel raised the issue, "Was Applicant prejudiced by the Court's erroneous and confusing jury charge, including but not limited to the Court's charges on involuntary manslaughter and criminal negligence" and also raised an ineffective assistance of counsel claim in the same regard (App. 536). The PCR judge denied the motion, finding that the "jury charge was properly delivered under South Carolina Law" and counsel's failure to object would therefore not be prejudicial (App. 542). The ground was not raised in the PCR appeal. Thus, it is procedurally barred under *Coleman* for the reasons discussed above.

Furthermore, the question of substantive South Carolina law is not proper for habeas corpus consideration. State courts "are the ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). Federal habeas is unavailable to retry state issues. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1989). Accordingly, this claim should be dismissed.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 40) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

July 9, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.